UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| FRED C. CARUSO, | CIVIL ACTION<br>NO. 5:17-CV-325-KKC |
| Plaintiff, | |
| V. | MEMORANDUM OPINION AND ORDER |
| NELSON E. CLEMMENS, | |
| Defendant. | |

*** *** ***

This matter is before the Court on Clemmens' objections to the Bankruptcy Judge's proposed findings of fact and conclusions of law in this case.[1] (DE 3; DE 14). For the reasons stated below, Clemmens' objections are overruled. Likewise, Caruso's motion for summary judgment is granted, (DE 2), and Clemmens' motion for summary judgment, (DE 1), is denied.

## I. FACTUAL BACKGROUND

The parties stipulate the following facts. (DE 3 at 2–5).

Revstone Industries, LLC, an automobile business and Delaware LLC, was founded in 2008 by and among three Children's Trusts, which were established for the benefit of the children of Revstone's chairman and sole board member: George S. Hofmeister. In 2011, the Children's Trusts assigned their membership interests in Revstone to Ascalon Enterprises, LLC, for which Hofmeister was also the chairman and sole member the board. *Id.* at 3. Revstone—founded by Hofmeister's Childrens' Trusts, and owned by Hofmeister's Ascalon

---

[1] This matter is best considered in light of *Caruso v. Clemmens*, 5:17-CV-326-KKC, which involves the same parties in a slightly different factual scenario.

1

Enterprises—operated its business through the direct or indirect ownership and management of approximately thirty-two (32) subsidiary entities. *Id.* at 2.

Clemmens met Hofmeister in 1986. In 2007, Hofmeister later selected Clemmens to serve as the trustee of Hofmeister's family trusts. *Id.* at 3.

In 2009, Clemmens had a personal account with Keeneland, which allowed him to bid on and purchase horses at Keeneland's auctions. Clemmens authorized Hofmeister to use the account. In 2009, Hofmeister used the account to purchase $268,765.00 in thoroughbreds. The thoroughbreds were shipped to Hofmeister's farm, but Clemmens was liable for the debt, for which Clemmens received the bills in November and December 2009. Clemmens sent the bills to Hofmeister requesting payment for the debt. *Id.* at 3–4.

In January 2010, Revstone issued a check to Keeneland in the amount of $269,026.21. *Id.* For purposes of this proceeding, this transaction is known as the "Keeneland Transfer."

In December 2012, Revstone filed for Chapter 11 relief in the United States Bankruptcy Court for the District of Delaware. In 2014, Revstone filed a complaint in that Delaware court seeking to avoid and recover its payment to Keeneland for the personal benefit of Clemmens as a fraudulent transfer. In 2015, after resolving some procedural issues, the matter was transferred to the Eastern District of Kentucky. In 2017, Keeneland agreed to pay Caruso $160,000.00, in exchange for being dismissed as a defendant, reducing Clemmens' potential aggregate liability to $109,026.21. *Id.* at 4–5.

Clemmens and Caruso then filed cross motions for summary judgment. (DE 1; DE 2). Caruso, the Bankruptcy Trustee for the Revstone/Spara Litigation Trust, seeks summary judgment against Clemmens to recover $109,026.21 in funds plus interest based on a theory of constructively fraudulent transfer pursuant to 11 U.S.C. § 544 and 550, and Del. Cod. Ann. 6 §§ 1301–12. (DE 2). Clemmens seeks summary judgment asserting Caruso cannot show Clemmens is the initial transferee or received a benefit from the transfer pursuant to 11

2

U.S.C. § 550(a)(1). The Bankruptcy Court held that Caruso's motion should be granted and Clemmens' motion should be denied. (DE 3). Clemmens presents nine (9) objections to the Bankruptcy Court's determinations. (DE 14).

## II. STANDARDS OF REVIEW

The Court reviews *de novo* the portions of the Bankruptcy Court's decision to which Clemmens objects. Fed. R. Bankr. P. 9033(d). The Court may accept, reject, or modify the Bankruptcy Court's proposed findings of fact and conclusions of law as required. *In re Sahuaro Petroleum & Asphalt Co.*, 170 B.R. 689 (C.D. Cal. 1994), *aff'd* 89 F.3d 846 (9th Cir. 1996), *cert. denied* 519 U.S. 992 (1996). The Bankruptcy Court opinion is to be reviewed with no deference, presumption of validity or correctness. *Waldman v. Stone*, 599 F. App'x 569, 572 (6th Cir. 2015) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir.1990)). Nonetheless, the Court is under no obligation to expand the Record beyond that presented. Fed. R. Bankr. P. 9033(d); *Waldman*, 599 F. App'x at 572 (citing *Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460, 464 (6th Cir.2010)).

On a motion for summary judgment, the movant has the burden of showing that there are no genuine issues of material fact in dispute. The evidence, together with all permissible inferences, is construed in the light most favorable to the opposing party. Fed. R. Bank. P. 7056 (incorporating Fed. R. Civ. P. 56); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). Once the moving party has made this initial showing, the opposing party must come forward with affirmative evidence sufficient "to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that

3

party's case, and on which that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 940 (6th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted)).

### III. ANALYSIS

Caruso seeks to recover pursuant to 11 U.S.C. § 544 and Del. Code. Ann. 6 § 1305, which is substantially the same as 11 U.S.C. § 548. To prevail, Caruso must show by a preponderance of the evidence that (1) Revstone made a transfer for less than reasonably equivalent value; and (2) Revstone was insolvent or became insolvent due to the transfer, engaged or about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay. *See Miller v. Greenwich Capital Fin. Prods., Inc.* (*In re Am. Bus. Fin. Servs., Inc.*), 471 B.R. 354, 378 n.17 (Bankr. D. Del. 2012); *In re Plassein Int'l Corp.*, 428 B.R. 64, 67 (D. Del. 2010). Caruso must also prove Clemmens is the person "for whose benefit such transfer was made" to recover from him under 11 U.S.C. § 550(a).

The parties' stipulated facts show that there is no genuine dispute that Revstone was in the automobile industry and had no interests in thoroughbreds or racing. (DE 3 at 2–5). Specifically, the stipulated facts show that Revstone paid Keeneland $269,026.21 for horses that Hofmeister purchased with Clemmens' account and retained for himself. (*See generally id.*; DE 2 at 2–3 (the Lukenda report, nothing that Hofmeister pulled these funds from Revstone's healthcare account); DE 2 at 54 (noting that Hofmeister, using Revstone's healthcare funds, made the transfer to pay Clemmens' debt on Clemmens' Keeneland Account No. 124692-329901)). There is no indication anywhere in these facts that Revstone received any benefit whatsoever for paying for Hofmeister's horses and paying off Clemmens'

4

debt. As such, the first prong of Del. Code. Ann. 6 § 1305 is satisfied. Revstone did not receive reasonably equivalent value for the transfer.

There is also no genuine issue as to Revstone's insolvency at the time of the transfer. Caruso's arguments rely on the expert report and opinion of James Lukenda, who concludes that Revstone was balance sheet insolvent and without adequate capital to pay its debts from its formation in 2008. (DE 2 at 41–42). The Lukenda report shows by a preponderance that Revstone was insolvent at the time the Keeneland transfer was made, and Clemmens' has not met his burden to indicate specific facts that show otherwise, (DE 1; DE 14 (and attachments)), because Clemmens has failed to introduce affirmative evidence that contradicts or overcomes the Lukenda report. *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2sd 1472, 1477 (6th Cir. 1986) ("Essentially, a motion for summary judgment is a means by which to challenge the opposing party to 'put up or shut up' on a critical issue.").

Nonetheless, Clemmens takes specific issue with the method Lukenda employed to determine the fair value of Revstone. In general, there are two methods to determine a corporation's value: going concern value and liquidation value. *EBC I, Inc. v. Am. Online, Inc.* (*In re EBC I, Inc.*), 380 B.R. 348, 355 (Bankr. D. Del. 2008). If a company is on its way out of business, going concern valuation is inappropriate—the company is no longer a going concern. *Fryman v. Century Factors* (*In re Art Shirt, Ltd, Inc.*), 93 B.R. 333, 341 (E.D. Pa. 1988). For that reason, Lukenda determined the liquidation value of Revstone, relying on GAAP financial statements and the fair market prices paid for the assets of Revstone. (DE 3 at 33–42). This methodology is reasonable and is adequately explained. *Id*. The mere fact that Clemmens disagrees with the result or methodology is not enough to defeat Caruso's motion for summary judgment, especially in light of the fact that Clemmens produces no alternate methodology that Lukenda should have considered or used to reach a conclusion.

5

(DE 3 at 10–13). Thus, the second prong of Del. Code. Ann. 6 § 1305 is satisfied. Revstone was insolvent at the time the Keeneland transfer was made.

Caruso has also proved that Clemmens is the person "for whose benefit such transfer was made" to recover from him under 11 U.S.C. § 550(a). This explanation is axiomatic. Clemmens' owed a $269,026.21 debt to Keeneland for horses bought by Hofmeister using Clemmens' account. (DE 2 at 54). Revstone paid Clemmens' debt, relieving Clemmens of the liability. *Id.* Clemmens does not deny that this is the case. (DE 1 at 4). Clemmens' argument that he personally never received horses or funds is of no consequence. *See generally id.* Similarly, Clemmens' citations to cases involving actual fraud are distinguishable. This case involves constructive fraud. As correctly noted by the Bankruptcy Court, payment of a debt of a third party is a classic example of a constructively fraudulent transaction that fits under 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550(a)(1). *See* 5 Collier on Bankr. § 550.2[04] (Resnick & Sommer eds., 16th ed. 2017). This factual scenario fits perfectly under 11 U.S.C. § 550(a), and Caruso may collect from Clemmens, 11 U.S.C. § 544.

## IV. OBJECTIONS

Clemmens' presents nine (9) objections to the Bankruptcy's Court's proposed findings of fact and conclusions of law. (DE 14 (objecting to DE 3)). Although the objections now include proper citations and exhibits, they remain meritless.

1. Clemmens objects to the consideration of the Lukenda report under Fed. R. Evid. 702, and the Bankruptcy Court's conclusion of law based on that report that Revstone made the Keeneland transfer while insolvent. (DE 14 at 3–4). For the same reasons as discussed above this objection overruled. Revstone was insolvent when the Keeneland transfer was made.

2. Clemmens objects to the conclusion that he failed to support his opposition to the Lukenda report, which found Revstone to be insolvent, with specific evidence. (DE 14

6

at 4). Clemmens has filed financial audits by AlixPartners as exhibits that indicate Revstone's solvency. These reports do claim that Revstone was solvent. But these reports also appear to calculate Revstone's value as a going concern, (*See, e.g.*, DE 14-4 at 357 ("Net Enterprise Value")), and *id.* at 378–79). As the Bankruptcy Court correctly noted, this is inappropriate when a company is going out of business, which is why the Lukenda report used liquidation/balance sheet value. *Fryman v. Century Factors* (*In re Art Shirt, Ltd, Inc.*), 93 B.R. 333, 341 (E.D. Pa. 1988). This objection is overruled.

3. Clemmens objected to the use of liquidation value to determine Revstone's solvency. (DE 14 at 4–5). Clemmens would prefer to use going concern value. In general, there are two methods to determine value: going concern or liquidation. *EBC I, Inc. v. Am. Online, Inc.* (*In re EBC I, Inc.*), 380 B.R. 348, 355 (Bankr. D. Del. 2008). The Court should consider the totality of the circumstances and be flexible in determining which approach to use. *Iridium Roaming, LLC v. Statutory Committee of Unsecured Creditors on behalf of Iridium Operating, LLC* (*In re Iridium Operating, LLC*), 373 B.R. 283, 344 (Bankr. S.D.N.Y. 2007). Here, given that Revstone did in fact file for bankruptcy within the two years following this fraudulent transaction, liquidation value is the most appropriate method to determine whether Revstone was solvent. *See Fryman*, 93 B.R. 333, 341. This objection is overruled. Revstone was insolvent.

4. Clemmens objects to the Bankruptcy Court's conclusion Clemmens should have provided a published valuation standard for the Lukenda Report to use. As correctly stated by the Bankruptcy Court, however, on a motion for summary judgment, once the movant has shown there is no dispute of material fact, with inferences are drawn in favor of the nonmovant, the nonmoving party must come forward with *specific* facts

that show there is a genuine issue for trial. *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The Bankruptcy Court thus correctly stated that Clemmens had a burden to overcome the Lukenda report, which established by a preponderance that Revstone was insolvent. Clemmens failed to meet that burden. One of the ways Clemmens might have attempted to meet that burden, however, is by providing a published valuation standard that would call the Lukenda report into doubt. Instead, Clemmens generally relied on argument unsupported by evidence. This is insufficient. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986) (metaphysical doubt is not enough to defeat a motion for summary judgment). For that reason, this objection is overruled.

5. Clemmens objects to the Bankruptcy Court's conclusion that the Lukenda report's methodology is sound. (DE 14 at 5). The Bankruptcy Court was within its powers to rely on the report, although this Court reviews that decision *de novo*. Fed. R. Bankr. P. 9033(d). In his objection, Clemmens does not indicate how precisely the methodology should have been different, or what exactly is flawed. This Court has also already found that the Lukenda report, (DE 2 at 18–22, 23–72), adequately describes and applies its own methods. *See Fryman v. Century Factors* (*In re Art Shirt, Ltd, Inc.)*, 93 B.R. 333, 341 (E.D. Pa. 1988). For that reason, this objection is overruled.

6. Clemmens objects to the Bankruptcy Court's conclusion that he had the burden of showing the pension obligations should not have been included in the Lukenda Report. (DE 14 at 5). This objection should be overruled. Again, Clemmens does not make any argument as to why his objection should be considered. The Lukenda report was considered by the Bankruptcy Court as evidence of insolvency. Clemmens had the

opportunity to depose Lukenda or submit an alternate expert report, but he did neither. The method employed by Lukenda—balance sheet/liquidation value—is the appropriate analysis when a company is on its death bed. *Fryman*, 93 B.R. at 341 (E.D. Pa. 1988). The source or this litigation is the bankruptcy of Revstone, so there can be no legitimate argument that Revstone is a going concern at this time for which some other valuation method would be appropriate. There is nothing in the Record to specifically explain why or how the pension obligations of Revstone should not have been considered as liabilities for purposes of determining solvency in a balance sheet/insolvency analysis. Clemmens' general argument will not suffice. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).

7. Clemmens objects to the Bankruptcy Court's conclusion that there is no basis to find fault with Lukenda's Methodology. (DE 14 at 6). Clemmens believes the Lukenda report was unreliable, but does not explain how, other than stating that Lukenda does not explain his methodology. Lukenda, however, does explain his methodology, and his methodology is well-founded. (DE 2 at 18–22, 23–72). This argument fails, and this objection is overruled.

8. Clemmens objects to the Bankruptcy Court's conclusion that the transfer was made with the intent to benefit Clemmens. (DE 14 at 6). This objection is overruled. Intent may be inferred for purposes of Del. Code. Ann. 6 § 1305. *Sahley v. Tipton, Co.*, 264 F. Supp. 653, 658 (D. Del. 1967) (noting that intent is a "fair inference" from circumstantial evidence); *see also* 5 Collier on Bankr. § 550.2[04] (Resnick & Sommer eds., 16th ed. 2017).

9. Clemmens objects to the Bankruptcy Court's conclusion that showing actual intent to benefit is not a requirement. This objection is overruled. Actual fraud is not an issue

here. Constructive fraud is, and intent may be inferred for purposes of constructive fraud under Del. Code. Ann. 6 § 1305. *Sahley*, 264 F. Supp. at 658 (noting that intent is a "fair inference" from circumstantial evidence). In addition, as correctly noted by the Bankruptcy Court, payment of a debt of a third party is a classic example of a constructively fraudulent transaction that fits under 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550(a)(1). *See* 5 Collier on Bankr. § 550.2[04] (Resnick & Sommer eds., 16th ed. 2017). Given the number of fraudulent transactions involving Revstone, Hofmeister, and Clemmens outlined in the Lukeda report and other matters before this Court, *see, e.g.*, *Caruso v. Clemmens*, 5:17-cv-325-KKC, fraudulent intent is properly inferred for purposes of this Keeneland transfer.

## V. CONCLUSION

Consistent with the above Opinion, the Court **ORDERS** as follows:

1. Clemmens' motion for summary judgment, (DE 1), is **DENIED**;
2. Caruso's motion for summary judgment, (DE 2), is **GRANTED**; and
3. Clemmens' objections, (DE 14), are **OVERRULED**.
4. Caruso is **AWARDED** $109,026.21 for the Keeneland Transfer, which may be collected from Clemmens.

Signed November 5, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY